UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 5-25-cv-03239-WLH-DFM | Date | December 8, 2025 |
|---|---|---|---|
| Title | *Tigran Tiraturian v. Pamela Bondi et al* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|

| Holidae Crawford | None |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** **(IN CHAMBERS) ORDER RE PETITIONER'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER [3]**

The Court is in receipt of Petitioner's *Ex Parte* Application for a Temporary Restraining Order (the "Application"). (Application, Dkt. No. 3-1). The Court is also in receipt of Respondent's Opposition (the "Opposition"). (Opp'n to Application, Dkt. No. 5). Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. For the reasons explained herein, the Court **GRANTS** the Application, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his further detention unless and until he is provided proper due process necessary for the revocation of an Order of Supervision ("OSUP"). Additionally, the Court **GRANTS** the Application's request to dispense with the filing of a bond.

//
//
//
//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

I. **BACKGROUND**

    A. **Statutory Background**

The detention and removal of noncitizens[1] ordered removed is governed by 8 U.S.C. § 1231 ("Section 1231"). 8 U.S.C. § 1231. Section 1231 states that, once "an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."[2] *Id.* § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Once the removal period passes and the "alien does not leave or is not removed . . . the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General[,]" which include statutorily mandated conditions. *Id.* § 1231(a)(3). This suggests that, if a noncitizen is ultimately *not* removed, they will be placed under an OSUP upon release.

Certain noncitizens – including those who are removable due to certain criminal conduct – "may be detained beyond the removal period, and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.* § 1231(a)(6). In other words, although noncitizens under certain conditions may be detained beyond the removal period, once they *are* released, they must similarly be subject to supervision under the regulations prescribed by the Attorney General. Significantly, after the removal period passes and "after 'removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute,' [and] the noncitizens must be released." *Hoac v. Becerra*, No.

---

[1] The Court prefers the term noncitizen, but uses the terms noncitizen and alien interchangeably, given the statutory and regulatory language at issue.
[2] Section 1231 provides that the "removal period shall be extended beyond a period of 90 days . . . if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C). There is no indication that this portion of Section 1231 is relevant for purposes of this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025). In short, Section 1231 "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 698 (2001).

The right to remain under an OSUP, however, is not unlimited. Revocation of an OSUP is governed by 8 C.F.R. §§ 241.13(i), 241.4(l).[3] Revocation of an OSUP may occur either: (1) if the noncitizen "violates any of the conditions of release," *id.* §§ 241.13(i)(1), 241.4(l)(1); or (2) if it is determined "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Whether there is a significant likelihood that the alien may be removed in the reasonably foreseeable future is determined by assessing a series of factors, including "the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries . . . and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question." *Id.* § 241.13(f). Additionally, certain designated officials may revoke an OSUP as an act of discretion. *Id.* § 241.4(l)(2). Specifically, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [] custody an alien previously approved for release under the

---

[3] The regulations themselves provide an explanation for the relationship between sections 241.4 and 241.13, though the distinction remains somewhat opaque. *Id.* § 241.13(b)(1). Section 241.13 specifically governs "special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at [section] 241.4." *Id.* Section 241.13 further provides that "[s]ection 241.4 shall continue to govern the detention of aliens under a final order of removal, including aliens who have requested a review of the likelihood of their removal under this section, unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* In short, Section 241.13 applies to cases where a petitioner is in revocation proceedings, whereas Section 241.4 applies to routine custody reviews for aliens detained after the 90-day removal period.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

procedures in this section."[4] (*Id.*). Whether revocation is in the public interest is assessed under four factors: "(i) [t]he purposes of release have been served; (ii) [t]he alien violates any condition of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." (*Id.*).

Significantly, there are "revocation procedures" that must be followed, including that the noncitizen "will be notified of the reasons for revocation of his or her release" and will receive an "initial informal interview promptly" after being detained, to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). During such an interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." (*Id.*).

Together, the statutory and regulatory language sets forth three requirements to protect a noncitizen's right to due process: (1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a "prompt" opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official.

### B. Findings of Fact

Petitioner Tigran Tiraturian ("Petitioner") is a native of the former Soviet Union and citizen of Armenia. ("Notice to Appear," Dkt. No. 1-3). Petitioner first arrived in the United States as a refugee on or about April 20, 1988. (*Id.* at 3). He has remained in

---

[4] In situations where "referral of the case to the Executive Associate Commissioner" is not reasonable, a "district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest[.]" (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

the United States since, securing employment and building a family of his own with his wife and two children, all of whom are United States citizens. (Application, Decl. of Tigran Tiraturian and Sabrina Damast in Support of Petition ("Tiraturian and Damast Decl."), Dkt. No. 1-1 ¶ 8).

On December 10, 2002, Petitioner was convicted of a violation of section 12021(a)(1) of the California Penal Code (felon in possession of a firearm). (Notice to Appear at 3). Consequently, on October 16, 2003, Petitioner was ordered removed. ("Order of Removal," Dkt. No. 1-3). In February of 2004, ICE released Petitioner from its custody and placed Petitioner under an OSUP. (Tiraturian and Damast Decl. ¶ 2). On Petitioner's information and belief, he was released because the Armenian government declined to issue travel documents. (*Id*.).

More than two decades passed, and then ICE re-detained Petitioner at a check-in on November 25, 2025, in Los Angeles. (*Id*. ¶ 3). ICE then transferred Petitioner to the Adelanto Detention Facility on the same day. (*Id*. ¶ 5). Petitioner states that ICE did not provide him with any information as to why his OSUP was revoked. (*Id*.). Since his detention, ICE provided Petitioner with a Notice of Revocation[5] signed by a Supervisory Detention and Deportation Officer ("SDDO"). (*Id*.). The Notice of Revocation stated that "changed circumstances" led to Petitioner's arrest. (*Id*.). Additionally, it stated that

---

[5] As part of their Opposition, Respondents attach the Notice of Revocation of Release addressed to Petitioner and dated November 25, 2025. ("Notice of Revocation Release," Dkt. No. 5-1, Ex. B)). The Notice states that Petitioner's "case has been reviewed and it [was] determined that [he] will be kept in custody of U.S. Immigration and Customs Enforcement (ICE) at this time." (*Id*.). The Notice further states that "[t]his decision has been made based on a review of [his] file and [his] personal interview on account of changed circumstances in [his] case. ICE has determined that [he] can be removed from the United States pursuant to the outstanding order of removal against [him]. On October 16, 2003, [he] was ordered removed to Armenia by an Immigration judge." (*Id*.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

ICE believes it can now deport Petitioner based on the removal order to Armenia, but the Notice does not provide an explanation supporting this new belief. (*Id.*). Throughout Petitioner's detention, ICE officials have not asked Petitioner for any reason as to why he should not be detained or deported. (*Id.* ¶ 4).

## II.  DISCUSSION

### A. Legal Standard

A TRO may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In determining whether to issue a TRO, courts apply the four *Winter* factors (the "*Winter* Factors"), which also guide the evaluation of a request for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for a TRO and a preliminary injunction are "substantially identical").

Where a movant seeks a "mandatory injunction," they face a higher burden. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasizing that the plaintiff faced a "doubly demanding" burden for a mandatory injunction). In this context, a movant must show "the law and facts *clearly* favor her position, not simply that she is likely to succeed." *Id.* (emphasis in original).

### B. Conclusions of Law

The Court, in applying the *Winter* Factors, finds they weigh substantially in favor of granting Petitioner's Application. For the reasons explained herein, the Court **GRANTS** the Application, thereby **ORDERING** Respondents to release Petitioner and **ENJOINING** his further detention unless and until he is provided proper due process

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

necessary for the revocation of an OSUP. Additionally, the Court **GRANTS** the Application's request to dispense with the filing of a bond.

### 1. *The Winter Factors Support Granting Petitioner's Application*

Turning to the *Winter* Factors, the Court finds that they weigh heavily in favor of granting Petitioner's Application. The Court addresses each factor in turn.

#### a. Likelihood of Success on the Merits

The first *Winter* factor "'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). Petitioner contends in his Petition that his detention by ICE is unlawful – given the absence of a statement of reasons as to why his order of release on supervision had been revoked, as well as the failure to provide "an informal interview regarding any reasons for the revocation of his OSUP" – thereby violating the Fifth Amendment's due process requirement. (Application at 2). The Court addresses Petitioner's likelihood of success on the merits.

Petitioner argues that ICE revoked his OSUP in violation of the regulatory safeguards intended to ensure due process for noncitizens. (*Id.* at 4). He contends that his re-detention absent notice as to why his OSUP was revoked, nor an opportunity to challenge the revocation through a prompt, informal interview, amounts to a Fifth Amendment due process violation. (*Id.*). The Court agrees.

First, although Petitioner does not challenge that he received the Notice of Revocation of Release, the Notice produced by Respondents is facially deficient. (Declaration of Jorge A. Suarez ("Suarez Decl."), Dkt. No. 5-1, Ex. B ("Notice of Revocation of Release")). As Petitioner correctly argues, the Notice that Petitioner received fails to provide the "reasons for revocation of his [] release[.]" 8 C.F.R. § 241.13(i)(3). In fact the Notice merely provides a generic statement that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES - GENERAL

Petitioner's "case has been reviewed and [it was] determined that [he] will be kept in custody of U.S. Immigration and Customs Enforcement (ICE) at this time." (Notice of Revocation of Release at 1). The Notice further states that "[t]his decision has been made based on a review of [Petitioner's] file and/or [his] personal interview on account of changed circumstances in [his] case." (*Id.*). The Notice concludes that "ICE has determined that [he] can be removed from the United States pursuant to the outstanding order of removal against [him]." (*Id.*). The Notice further states that, on October 16, 2003, Petitioner was ordered removed to Armenia, and the previous "removal order is administratively final and [his] case is under current review." (*Id.*). The Notice contains no factual allegations that led to the custody redetermination in 2025. Specifically, the Notice fails to state what circumstances has changed in the twenty-two years since Petitioner was ordered removed to Armenia.[6]

As the Notice does not "identify any specific changed circumstances[,]" it is insufficient to put Petitioner on notice as to what led to the revocation of his OSUP. *Perez-Escobar v. Moniz*, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025). The Notice is simply insufficient to convey to Petitioner (and this Court) the grounds for revocation.

Second, the record does not establish that the requisite informal interview occurred or that Petitioner was apprised of the grounds underlying that interview. Section 241.13(i)(3) states, "[t]he Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be

---

[6] Respondents attempt to cure this defect by providing the Court with possible explanations in its opposition to the Petition, but such *ex post* attempts to justify the discretionary decision are insufficient to satisfy the controlling regulations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." Here, Petitioner contends that he had "not been provided with an informal interview regarding any reasons for the revocation of his OSUP," to "afford [him] an opportunity to respond to the reasons for revocation stated in the notification." (Application at 2; § 241.13(i)(3)). Petitioner's declaration, however, is silent on whether an informal interview occurred.

Petitioner does declare, however, that "[w]hen I was detained. . .[n]o officer at the federal building asked me if there was any reason I thought that I should not be detained or deported." (Tiraturian and Damast Decl. ¶ 4). Respondents have attempted to rebut Petitioner's unsupported claim that he did not receive an interview by stating that "an informal interview was conducted in which Tiraturian had an opportunity to respond to the reasons for revocation of his OSUP." (Suarez Decl. ¶ 26). Additionally, Respondents provided a copy of the form documenting that an informal interview was conducted pursuant to 8 C.F.R. §§ 241.4(l), 241.13(i)). (Suarez Decl., Ex. C ("Alien Informal Interview")). However, Respondents' declaration fails to address what specifically transpired during the interview and whether Petitioner was expressly informed that the interview constituted an opportunity for him to respond to the stated grounds for revocation. Indeed, given that the Notice was facially deficient for failing to provide the grounds for revocation, no interview conducted at the time of the Petitioner's re-detention could satisfy this requirement. Thus, the Court finds that an informal interview, pursuant to § 241.13(i)(3)), was not conducted.

Even if the informal interview occurred and Petitioner had been given the chance to respond to the stated ground for revocation, however, the Notice contains an illegible signature with no printed name of the signer. (*See* Notice). Adjacent to the signature line is simply SDDO. (*Id.*). Petitioner highlights that, to the extent that the reason for

revocation was due to a discretionary decision, such a decision must be made by the properly designated official. (Application at 8; § 241.4(l)(2). Specifically, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [] custody an alien previously approved for release under the procedures in this section." (*Id.*). As mentioned, with respect to title of the signer, it merely includes SDDO. (*See* Notice). Thus, in the event the reason for revocation was pursuant to an exercise of discretion, Petitioner's OSUP was not revoked by an authorized official.

"A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures – in particular the failure to give a detainee the required notice and interview – renders the re-detention unlawful." *Delkash v. Noem*, 5:25-cv-01675-HDV-AGR, *9 (C.D. Cal. Aug. 28, 2025) (collecting cases); *see also Hoac*, 2025 WL 1993771, at *4 ("Because there is no indication that an informal interview was provided to Petitioner, the court finds Petitioners is likely to succeed on his claim that his re-detainment was unlawful"). In short, "[t]hese procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful." *Delkash*, 5:25-cv-01675-HDV-AGR, *9; *see also Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and [the government] fails to adhere to it, the challenged deportation proceeding is invalid"). Respondents provided no controlling case law that suggests otherwise.[7]

---

[7] Respondents cite to *Ton v. Noem* to suggest that the violation of the revocation process is insufficient to justify release. No. 5:25-CV-02033-SB-AGR, 2025 WL 2995068, at *4-5 (C.D. Cal. Sept. 3, 2025). That case is distinguishable, however, where the petition was entirely silent as to whether the petitioner was interviewed or whether he was given a reason for revocation of his release. Here, to the contrary, Petitioner asserts he was not

In sum, given Petitioner's showing that "the law and facts *clearly* favor [his] position" with respect to his wrongful detention claims, this first factor weighs in favor of granting the Application with respect to the notice and hearing requirements for revocation of OSUP. *Garcia*, 786 F.3d at 740 (emphasis in original).

      *b.* Irreparable Harm

A party seeking preliminary relief must also make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter*, 555 U.S. at 22; *see also All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (" . . . plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction). "'[I]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.'" *Chhoeun v. Marin*, 306 F.Supp.3d 1147, 1162 (C.D. Cal. 2018) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Furthermore, "the Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention' including 'subpar medical and psychiatric care in ICE detention facilities' . . ." *Hoac*, 2025 WL 1993771, at *6 (quoting *Hernandez v. Sessions*, 872 F.3d at 995 (finding irreparable harm where the petitioner was detained far from his family and was at risk of losing his job and housing).

//

---

provided a reason for revocation and that an unauthorized individual approved the revocation.

Here, given the Court's conclusion that Petitioner is likely to succeed on the merits of his claim that he suffered a Fifth Amendment due process violation – with respect to his wrongful re-detention – the Court finds this factor weighs in favor of granting the Application.[8]  *Chhoeun*, 306 F.Supp.3d at 1162; *Delkash*, 5:25-cv-01675-HDV-AGR, *9; *Hoac,* 2025 WL 1993771, at *6.  Accordingly, this factor weighs strongly in favor of granting the Application.

### c.  Balance of Equities and Public Interest

Finally, "[t]he balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action." *Hoac*, 2025 WL 1993771, at *6.  "'Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention.'" (*Id.*) (quoting *Vargas v. Jennings,* No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)).

Here, the Court finds that the "balance of equities and public interest 'tips sharply' in favor of [Petitioner]." *Delkash*, 5:25-cv-01675-HDV-AGR, *10.  "Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering the harms of immigration detention." *Hoac*, 2025 WL 1993771, at *6. "On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal, especially considering Petitioner's compliance with the requirements of the [OSUP] . . . and his economic and familial ties to [California]." *Id.*  These factors, therefore, together weigh in favor of granting the Application.

In short, the *Winter* Factors weigh heavily in favor of granting the Application with respect to Petitioner's wrongful detention claims.  Accordingly, the Court **GRANTS** the

---

[8] Respondents do not dispute that there is a presumption of irreparable harm in the context of an alleged constitutional deprivation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Application, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his re-detention unless and until he is provided proper due process necessary for the revocation of an order of supervision.

*2. Petitioner will not be Required to Provide Security*

Petitioner argues that a bond, pursuant to Federal Rule of Procedure 65, should not be imposed due to the significant hardship it would pose on Petitioner and because there is no realistic likelihood of harm to Respondents if the Court grants the requested TRO. Federal Rule of Procedure 65 states, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. However, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Courturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Here, there is no realistic likelihood of harm to Respondents if the Court grants the requested TRO, and it would likely pose significant hardship to Petitioner to have a bond imposed. The Court will exercise its discretion and waive this requirement.

## II.   CONCLUSION

For the reasons explained herein, the Court **GRANTS** the Application, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his further detention unless and until he is provided proper due process necessary for the revocation of an OSUP. The Court also **GRANTS** the Application's request to dispense with the filing of a bond. This TRO will expire in 14 days. A preliminary injunction hearing is set for December 19, 2025, at 1:30 p.m. Should the parties wish to submit additional briefing, Petitioner must file any opening brief and related submissions no later than 5:00

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

p.m. on December 12, 2025, and Respondents must file any opposing brief no later than 5:00 p.m. on December 17, 2025. No reply brief will be accepted. The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the temporary restraining order.

**IT IS SO ORDERED.**