UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIGRAN TIRATURIAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PAMELA BONDI, et al.,<br><br>　　　　Defendants. | Case No. 5-25-cv-03239-WLH-DFM<br><br>**ORDER RE PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION [3]** |

The Court is in receipt of Petitioner's Motion for Preliminary Injunction. (Application, Dkt. No. 3). On December 19, 2025, the Court held a hearing, and all parties submitted on the Court's tentative order, which is now adopted as a final order. For the foregoing reasons, the Court **GRANTS** the Motion, thereby **ENJOINING** Petitioner's further detention unless and until he is provided proper due process necessary for the revocation of an Order of Supervision.

**I.　BACKGROUND**

　　**A.　Statutory Background**

The Court detailed the relevant statutory background in the TRO. (*See* TRO at 2-4). The Court incorporates that background by reference.

//

### B. Findings of Fact

The Court also incorporates by reference the findings of fact from the TRO. (*See* TRO at 4-6).

## II. DISCUSSION

### A. Legal Standard

Courts apply the four *Winter* factors (the "*Winter* Factors") in evaluating a request for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for a TRO and a preliminary injunction are "substantially identical").

Where a movant seeks a "mandatory injunction," they face a higher burden. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasizing that the plaintiff faced a "doubly demanding" burden for a mandatory injunction). In this context, a movant must show "the law and facts *clearly* favor her position, not simply that she is likely to succeed." *Id.* (emphasis in original). By contrast, a "prohibitory injunction" is one that seeks to preserve the status quo during the pendency of litigation. *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014). "The 'status quo' refers to the legally relevant relationship *between the parties* before the controversy arose." *Id.* (quoting *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012)) (emphasis in original).

### B. Conclusions of Law

Because no additional briefing was submitted to the Court, its analysis has not changed. The Court, in applying the *Winter* Factors, finds they continue to weigh substantially in favor of granting Petitioner's Motion. For the reasons explained herein, the Court **GRANTS** the Motion and **ENJOINS** Petitioner's further detention

unless and until he is provided proper due process necessary for the revocation of an Order of Supervision.

### 1. The Winter Factors Support Granting Petitioner's Motion

Turning to the *Winter* Factors, the Court finds that they weigh heavily in favor of granting Petitioner's Motion. The Court addresses each factor in turn.

#### a. Likelihood of Success on the Merits

The first *Winter* factor "'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). Petitioner contends in his Petition that his detention by ICE is unlawful – given the absence of a statement of reasons as to why his order of release on supervision had been revoked, as well as the failure to provide "an informal interview regarding any reasons for the revocation of his OSUP" – thereby violating the Fifth Amendment's due process requirement. (Application at 2). The Court addresses Petitioner's likelihood of success on the merits.

Petitioner argues that ICE revoked his OSUP in violation of the regulatory safeguards intended to ensure due process for noncitizens. (*Id*. at 4). He contends that his re-detention absent notice as to why his OSUP was revoked, nor an opportunity to challenge the revocation through a prompt, informal interview, amounts to a Fifth Amendment due process violation. (*Id.*). The Court agrees.

First, although Petitioner does not challenge that he received the Notice of Revocation of Release, the Notice produced by Respondents is facially deficient. (Declaration of Jorge A. Suarez ("Suarez Decl."), Dkt. No. 5-1, Ex. B ("Notice of Revocation of Release")). As Petitioner correctly argues, the Notice that Petitioner received fails to provide the "reasons for revocation of his [] release[.]" 8 C.F.R. § 241.13(i)(3). In fact the Notice merely provides a generic statement that Petitioner's "case has been reviewed and [it was] determined that [he] will be kept in custody of U.S. Immigration and Customs Enforcement (ICE) at this time." (Notice

3

of Revocation of Release at 1). The Notice further states that "[t]his decision has been made based on a review of [Petitioner's] file and/or [his] personal interview on account of changed circumstances in [his] case." (*Id.*). The Notice concludes that "ICE has determined that [he] can be removed from the United States pursuant to the outstanding order of removal against [him]." (*Id.*). The Notice further states that, on October 16, 2003, Petitioner was ordered removed to Armenia, and the previous "removal order is administratively final and [his] case is under current review." (*Id.*). The Notice contains no factual allegations that led to the custody redetermination in 2025. Specifically, the Notice fails to state what circumstances has changed in the twenty-two years since Petitioner was ordered removed to Armenia.[1]

As the Notice does not "identify any specific changed circumstances[,]" it is insufficient to put Petitioner on notice as to what led to the revocation of his OSUP. *Perez-Escobar v. Moniz*, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025). The Notice is simply insufficient to convey to Petitioner (and this Court) the grounds for revocation.

Second, the record does not establish that the requisite informal interview occurred or that Petitioner was apprised of the grounds underlying that interview. Section 241.13(i)(3) states, "[t]he Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." Here, Petitioner contends that he had "not been provided with an informal interview regarding any reasons for the revocation of his OSUP," to "afford [him] an opportunity to respond to the reasons for revocation

---

[1] Respondents attempt to cure this defect by providing the Court with possible explanations in its opposition to the Petition, but such *ex post* attempts to justify the discretionary decision are insufficient to satisfy the controlling regulations.

4

stated in the notification." (Application at 2; § 241.13(i)(3)). Petitioner's declaration, however, is silent on whether an informal interview occurred.

Petitioner does declare, however, that "[w]hen I was detained. . .[n]o officer at the federal building asked me if there was any reason I thought that I should not be detained or deported." (Tiraturian and Damast Decl. ¶ 4). Respondents have attempted to rebut Petitioner's unsupported claim that he did not receive an interview by stating that "an informal interview was conducted in which Tiraturian had an opportunity to respond to the reasons for revocation of his OSUP." (Suarez Decl. ¶ 26). Additionally, Respondents provided a copy of the form documenting that an informal interview was conducted pursuant to 8 C.F.R. §§ 241.4(l), 241.13(i)). (Suarez Decl., Ex. C ("Alien Informal Interview")). However, Respondents' declaration fails to address what specifically transpired during the interview and whether Petitioner was expressly informed that the interview constituted an opportunity for him to respond to the stated grounds for revocation. Indeed, given that the Notice was facially deficient for failing to provide the grounds for revocation, no interview conducted at the time of the Petitioner's re-detention could satisfy this requirement. Thus, the Court finds that an informal interview, pursuant to § 241.13(i)(3)), was not conducted.

Even if the informal interview occurred and Petitioner had been given the chance to respond to the stated ground for revocation, however, the Notice contains an illegible signature with no printed name of the signer. (*See* Notice). Adjacent to the signature line is simply SDDO. (*Id.*). Petitioner highlights that, to the extent that the reason for revocation was due to a discretionary decision, such a decision must be made by the properly designated official. (Application at 8; § 241.4(l)(2). Specifically, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [] custody an alien previously approved for release under the procedures in this section." (*Id.*). As mentioned, with respect to title of the signer, it merely includes SDDO. (*See* Notice). Thus, in the

event the reason for revocation was pursuant to an exercise of discretion, Petitioner's OSUP was not revoked by an authorized official.

"A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures – in particular the failure to give a detainee the required notice and interview – renders the re-detention unlawful." *Delkash v. Noem*, 5:25-cv-01675-HDV-AGR, *9 (C.D. Cal. Aug. 28, 2025) (collecting cases); *see also Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that an informal interview was provided to Petitioner, the court finds Petitioners is likely to succeed on his claim that his re-detainment was unlawful"). In short, "[t]hese procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful." *Delkash*, 5:25-cv-01675-HDV-AGR, *9; *see also Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and [the government] fails to adhere to it, the challenged deportation proceeding is invalid"). Respondents provided no controlling case law that suggests otherwise.[2]

In sum, given Petitioner's showing that "the law and facts *clearly* favor [his] position" with respect to his wrongful detention claims, this first factor weighs in favor of granting the Motion with respect to the notice and hearing requirements for revocation of OSUP. *Garcia*, 786 F.3d at 740 (emphasis in original).

//

---

[2] Respondents cite to *Ton v. Noem* to suggest that the violation of the revocation process is insufficient to justify release. No. 5:25-CV-02033-SB-AGR, 2025 WL 2995068, at *4-5 (C.D. Cal. Sept. 3, 2025). That case is distinguishable, however, where the petition was entirely silent as to whether the petitioner was interviewed or whether he was given a reason for revocation of his release. Here, to the contrary, Petitioner asserts he was not provided a reason for revocation and that an unauthorized individual approved the revocation.

### b. Irreparable Harm

A party seeking preliminary relief must also make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter*, 555 U.S. at 22; *see also All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (" . . . plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction). "'[I]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.'" *Chhoeun v. Marin*, 306 F.Supp.3d 1147, 1162 (C.D. Cal. 2018) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Furthermore, "the Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention' including 'subpar medical and psychiatric care in ICE detention facilities' . . ." *Hoac*, 2025 WL 1993771, at *6 (quoting *Hernandez v. Sessions*, 872 F.3d at 995 (finding irreparable harm where the petitioner was detained far from his family and was at risk of losing his job and housing).

Here, given the Court's conclusion that Petitioner is likely to succeed on the merits of his claim that he suffered a Fifth Amendment due process violation – with respect to his wrongful re-detention – the Court finds this factor weighs in favor of granting the Motion.³ *Chhoeun*, 306 F.Supp.3d at 1162; *Delkash*, 5:25-cv-01675-HDV-AGR, *9; *Hoac,* 2025 WL 1993771, at *6. Accordingly, this factor weighs strongly in favor of granting the Motion.

//

//

---

³ Respondents do not dispute that there is a presumption of irreparable harm in the context of an alleged constitutional deprivation.

### c. Balance of Equities and Public Interest

Finally, "[t]he balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action." *Hoac*, 2025 WL 1993771, at *6. "'Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention.'" (*Id.*) (quoting *Vargas v. Jennings,* No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)).

Here, the Court finds that the "balance of equities and public interest 'tips sharply' in favor of [Petitioner]." *Delkash*, 5:25-cv-01675-HDV-AGR, *10. "Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering the harms of immigration detention." *Hoac*, 2025 WL 1993771, at *6. "On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal, especially considering Petitioner's compliance with the requirements of the [OSUP] . . . and his economic and familial ties to [California]." *Id.* These factors, therefore, together weigh in favor of granting the Motion.

In short, the *Winter* Factors weigh heavily in favor of granting the Motion with respect to Petitioner's wrongful detention claims. Accordingly, the Court **GRANTS** the Motion, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his re-detention unless and until he is provided proper due process necessary for the revocation of an order of supervision.

//
//
//
//
//
//

## III. CONCLUSION

For the reasons explained herein, the Court **GRANTS** the Motion and **ENJOINS** Petitioner's further detention unless and until he is provided proper due process necessary for the revocation of an Order of Supervision.

**IT IS SO ORDERED.**

Dated: December 19, 2025

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE